**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JESUS HOB DURAN, <br><br> Plaintiff, <br><br> v. <br><br> ASSISTANT WARDEN ROOT, et al., <br><br> Defendants. | Civil Action <br> No. 23-12960 (CPO) (MJS) <br><br><br> **OPINION** |

**O'HEARN, District Judge.**

Before the Court is Defendants' motion to dismiss the Amended Complaint (hereinafter "Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 48).  For the following reasons, the Court will grant Defendants' motion and dismiss the Complaint for failure to state a claim.

## I.    FACTUAL BACKGROUND[1]

This case arises from Plaintiff's placements in the Special Housing Unit ("SHU") during his incarceration at Federal Correctional Institution Fairton.  The remaining Defendants are Assistant Warden Brian Root, Warden Steven Merendino, Assistant Warden Christopher Nobile, Special Investigative Services ("SIS") Lieutenant John Weiler, and SIS Officer Jonathan Kopistecki. (*See* ECF No. 13, at 4–8; ECF No. 48-2, at 5 n.2 (correcting the spelling of certain Defendants' names)).

On January 27, 2023, officers placed Plaintiff into the SHU without explanation. (ECF No. 13, at 6).  A few days later, Assistant Warden Root informed Plaintiff that he was placed in the SHU for witness-security, as an informant affiliated with the gang MS-13. (*Id*. at 9).  Plaintiff told

---

[1] The Court will accept as true the factual allegations in the Complaint for the purposes of this Opinion only.  The Court has made no findings as to the veracity of Plaintiff's allegations.

Assistant Warden Root that he was the wrong inmate, because he was a former member of the prison gang, partido revolucionario mexicano ("PRM"), not MS-13. (*See id.*; ECF No. 48-2, at 5).

On February 9, 2023, Plaintiff discovered that there was another inmate with the last name Duran, housed in the SHU, that was affiliated with MS-13. (ECF No. 13, at 9). About a week later, Plaintiff attempted to explain the mistaken identity situation to Assistant Warden Root. (*Id.*). Assistant Warden Root replied that Plaintiff was under SIS investigation and refused to explain for what reason. (*Id.*). The following week, Plaintiff asked Warden Merendino "why he was being punished" for the prison's mistake. (*Id.*). Defendant Merendino replied that Plaintiff was under SIS investigation and "knows what he did." (*Id.*).

On February 28, 2023, Plaintiff asked SIS Lieutenant Wieler when SIS would inform him of what he was being investigated for and for his SHU placement order, as thirty days had passed. (*Id.* at 10). SIS Lieutenant Wieler advised that no "order has to be given [and] that all an inmate needs to know is [that] he is being investigated." (*Id.* (cleaned up)).

A few weeks later, on March 21, 2023, Warden Merendino, Assistant Warden Root, and Assistant Warden Nobile took Plaintiff to a holding room. (*Id.*). Assistant Warden Root advised that Plaintiff "was going to be allowed out of the SHU," but that "if he hears anything about what happened in the SHU and the other Duran," Plaintiff would be returned to the SHU. (*Id.*). Plaintiff did not comply, filed grievances regarding the events above, and spoke to someone from the Bureau of Prisons' ("BOP") regional office. (*Id.* at 11).

On June 14, 2023, Assistant Warden Root told Plaintiff that he "should have kept [his] mouth shut." (*Id.*). Defendants Root, Merendino, Nobile, and the SIS returned Plaintiff to the SHU in retaliation for filing grievances. (*Id.*). Approximately two weeks later, SIS Officer Kopistecki took Plaintiff and his cellmate to an office and informed Plaintiff that he "was pissing off the wrong

2

people and to apologize before things get worse." (*Id.*). SIS Officer Kopistecki then threatened to place Plaintiff and his cellmate in paper suits to cause conflict between them. (*Id.*). Later that day, the two men were placed in paper suits. (*Id.*).

Finally, Plaintiff alleges that since June 14, 2023, he had been denied certain "personal and legal mail" and that the prison had not responded to his attorney's attempts to set up a call. (*Id.* at 12). Plaintiff does not specify, however, who he believes was responsible for those ostensibly retaliatory actions. (*See id.*).

Plaintiff initiated this case in August of 2023, and filed the instant Complaint in February of 2024, claiming that Defendants violated his rights under the First, Fifth, and Eighth Amendments. (*Id.* at 5–16). In terms of relief, Plaintiff seeks compensatory and punitive damages. Defendants filed a motion to dismiss pursuant to Rule 12(b)(6), (ECF No. 48), Plaintiff filed an Opposition, (ECF No. 49), and Defendants did not file a reply.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

## IV.  DISCUSSION

Plaintiff brings his remaining claims pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (ECF No. 13, at 3). The Court construes the Complaint as raising retaliation claims under the First Amendment, procedural due process claims under the Fifth Amendment, and cruel and unusual punishment claims under the Eighth Amendment. (*See id*. at 5–16). Defendants move to dismiss, arguing among other things, that Plaintiff can no longer pursue a *Bivens* remedy in light of *Ziglar v. Abbasi*, 582 U.S. 120 (2017), and its progeny.

### A.  Current State of *Bivens*

In *Bivens*, the Supreme Court created an implied cause of action under the Fourth Amendment, "against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations." *Egbert v. Boule*, 596 U.S. 482, 490 (2022) (quoting *Bivens*, 403 U.S. at 397). The Court extended the *Bivens* remedy twice more in *Davis v. Passman*, 442 U.S. 228 (1979) (holding that a *Bivens* remedy exists for a Fifth Amendment gender discrimination claim where a congressman fired an administrative assistant), and *Carlson v. Green*, 446 U.S. 14 (1980) (holding that a prisoner's estate had a *Bivens* remedy under the Eighth

4

Amendment against prison officials for failing to treat the prisoner's asthma which resulted in his death). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 582 U.S. at 131.

After more than fifty years of *Bivens* jurisprudence, "the Supreme Court . . . pulled back the reins to . . . a full stop." *Xi v. Haugen*, 68 F.4th 824, 832 (3d Cir. 2023). In *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017), the Supreme Court announced, "that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." The Court held that if "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," a court "must refrain from creating it." *Egbert*, 596 U.S. at 491 (quoting *Ziglar*, 582 U. S. at 137). "Even a single sound reason to defer to Congress is enough to *require* a court to refrain from creating such a remedy." *Id.* (emphasis added) (internal quotation marks omitted). Stated differently, "if there is a rational reason to think" that Congress, rather than the courts, "should decide whether to provide . . . a damages remedy, . . . . no *Bivens* action may lie." *Id.* at 492. The Court warned that Congress should make that decision "in [al]most every case." *Id.*

As a result, when faced with a proposed *Bivens* claim, courts should now engage in a two-step inquiry. *Id.*; *Xi*, 68 F.4th at 833. First, the court asks, "whether the case presents a new *Bivens* context," *i.e.*, whether the case is "meaningfully different" from *Bivens*, *Davis*, and *Carlson*. *Egbert*, 596 U.S. at 492; *Xi*, 68 F.4th at 833. "If a case does not present a new *Bivens* context, the inquiry ends there, and a *Bivens* remedy is available." *Shorter v. United States*, 12 F.4th 366, 372 (3d Cir. 2021).

If the claim does arise in a new context, a court should proceed to the second step and ask whether any "special factors" warrant hesitation in extending a *Bivens* remedy to the claim.

5

*Egbert*, 596 U.S. at 492; *Xi*, 68 F.4th at 833.  The Supreme Court defined a "special factor" as one that suggests that Congress is better suited than the judiciary to "weigh the costs and benefits" of creating a new remedy for monetary damages. *Egbert*, 596 U.S. at 492; *Xi*, 68 F.4th at 833.  The test is incredibly stringent, "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492 (quoting *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)); *Xi*, 68 F.4th at 836.

### B.  New Contexts

When deciding whether a claim presents a new context, the Supreme Court has "made clear that the category of 'new contexts' is 'broad,' and [that] this threshold test is 'easily satisfied.'" *Xi*, 68 F.4th at 834 (quoting *Hernandez*, 589 U.S. at 102; *Ziglar*, 582 U.S. at 139); *Bulger v. Hurwitz*, 62 F.4th 127, 138 (4th Cir. 2023); *see also Mays v. Smith*, 70 F.4th 198, 203 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 1008 (2024) ("This [step] is a low bar because even 'quite minor' differences . . . can amount to a new context.").  Thus, even if a case presents "almost parallel circumstances or a similar mechanism of injury," such "superficial similarities are not enough." *Egbert*, 596 U.S. at 495 (internal quotation marks omitted); *Mays*, 70 F.4th at 204; *Xi*, 68 F.4th at 834.

To determine whether a claim might differ in a "meaningful way," the Supreme Court suggested that these differences might concern:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

6

*Ziglar*, 582 U.S. at 139–40.  The Court emphasized that this was not an exhaustive list, but merely a few examples. *Id*. at 139.

Starting with Petitioner's First Amendment claims, it is well settled that "the Supreme Court has never recognized a *Bivens* remedy for First Amendment retaliation claims . . . in the prison context." *Mack v. Yost*, 968 F.3d 311, 320 (3d Cir. 2020); *see also Egbert*, 596 U.S. at 498 ("[T]here is no *Bivens* cause of action for . . . First Amendment retaliation claim[s]."); *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). Accordingly, Petitioner's First Amendment retaliation claims present a new *Bivens* context.

Next, Petitioner's cruel and unusual punishment claims regarding his placement into the SHU and being forced to wear a "paper suit" also present a new *Bivens* context.  The nature of these claims is entirely different from those in *Bivens*, *Davis*, and *Carlson*.  *See Ziglar*, 582 U.S. at 131 (discussing *Bivens*, a Fourth Amendment unreasonable search and seizure claim against federal narcotics agents; *Davis*, a Fifth Amendment gender discrimination claim against a congressman; and *Carlson*, an Eighth Amendment claim for failure to provide adequate medical care to a federal prisoner); *see also Goldey v. Fields*, 606 U.S. 942, 943–44 (2025) (holding that Eighth Amendment claims related to solitary confinement and physical abuse during that period presented a new context); *Kalu v. Spaulding*, 113 F.4th 311, 338 (3d Cir. 2024) (finding that Eighth Amendment conditions of confinement claims presented a new context).

Finally, Petitioner's Fifth Amendment procedural due process claims challenging the decisions to place him in the SHU without notice or an opportunity to be heard are similarly different from those in *Bivens*, *Davis*, and *Carlson*.  *See, e.g.*, *Ziglar*, 582 U.S. at 131; *Mays v. Smith*, 70 F.4th 198, 203 (4th Cir. 2023) ("The Supreme Court has never authorized a *Bivens* claim

7

for procedural due process."); *Schwarz v. Meinberg*, 761 F. App'x 732, 734 (9th Cir. 2019) ("Fifth Amendment procedural due process claims presented [a] new *Bivens* context."). Consequently, these claims also present a new *Bivens* context.

### C. Special Factors

As these claims present new *Bivens* contexts, the Court must proceed to the second step and determine whether any "special factors" warrant hesitation in extending a *Bivens* remedy to Plaintiff's claims. *Egbert*, 596 U.S. at 492; *Xi*, 68 F.4th at 833. Once again, a "special factor" is one that suggests that Congress is better suited than the judiciary to "weigh the costs and benefits" of creating a new remedy for monetary damages. *See Egbert*, 596 U.S. at 492. If "there is *any* rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed," a court cannot imply a cause of action under *Bivens*. *Id*. at 496 (emphasis in original) (internal quotation marks omitted); *Xi*, 68 F.4th at 836.

Here, as "in [al]most every case," a number of special factors weigh against creating a *Bivens* remedy. *See Egbert*, 596 U.S. at 492. First, the Supreme Court held in *Egbert* that "a court may not fashion a *Bivens* remedy if Congress . . . has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Id*. at 493 (quoting *Ziglar*, 582 U.S. at 137). The Supreme Court held that the BOP's administrative remedy program is a sufficient "alternative remedial structure" to constitute a special factor. *See id.* at 497 (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)); *Muniz v. United States*, 149 F.4th 256, 263–65 (3d Cir. 2025); *Bulger*, 62 F.4th at 140–41; *Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022).

Since the BOP's administrative remedy program is an "alternative remedial structure" that was available to Plaintiff, "that alone, like any special factor, is reason enough to . . . [preclude] a new *Bivens* cause of action." *Egbert*, 596 U.S. at 493; *Bulger*, 62 F.4th at 140–41; *Muniz*, 149

8

F.4th at 264–65; *Marquez v. C. Rodriguez*, 81 F.4th 1027, 1033 (9th Cir. 2023); *Silva*, 45 F.4th at 1141; *Dongarra*, 27 F.4th at 181. "It is irrelevant that monetary damages are not available through the . . . program." *Yaeger v. Song*, No. 22-05056, 2024 WL 3064673, at *4 (D.N.J. June 20, 2024); *see also Egbert*, 596 U.S. at 493 (holding that it does not matter that "existing remedies do not provide complete relief"); *Muniz*, 149 F.4th at 264 ("The effectiveness of the [BOP administrative remedy program] is, at best, dubious. . . . But, in the step-two *Bivens* analysis, alternative remedies need not provide complete relief." (cleaned up)). "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy," even if those alternatives "are not as effective as an individual damages remedy." *Egbert*, 596 U.S. at 498 (internal quotation marks omitted).

While the Court is cognizant of the practical difficulties, Plaintiff was able to use the administrative process, and it did spur the BOP to begin an investigation. (*See* ECF No. 13, at 5, 10). Accordingly, the existence of the BOP's administrative remedy program is a special factor that cautions against implying a *Bivens* remedy. *See Egbert*, 596 U.S. at 492–93 (noting that *Bivens* relief will be unavailable "in most every case"); *Muniz v. United States*, 149 F.4th at 265 (holding that since the Plaintiff had access to the BOP's administrative remedy program "his *Bivens* claim is foreclosed").

Next, the passage of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104–134 (April 26, 1996), is another special factor. Approximately fifteen years "after *Carlson* was decided, Congress passed the [PLRA], which made comprehensive changes to the way prisoner abuse claims must be brought in federal court." *Ziglar*, 582 U.S. at 148. Congress had the "specific occasion to consider the matter of prisoner abuse and . . . [how] to remedy those wrongs," but

9

chose "not [to] provide . . . a standalone damages remedy against federal jailers." *See id*. at 148–49. That legislative action "suggest[s] that Congress does not want a damages remedy," and "is . . . a factor" that cautions against implying a *Bivens* remedy. *Id*. at 148; *Davis v. Samuels*, 962 F.3d 105, 113 n.5 (3d Cir. 2020). Similarly, the Supreme Court observed that in recent years, "Congress has actively legislated in the area of prisoner litigation but has not enacted a statutory cause of action for money damages." *Goldey*, 606 U.S. at 944. That inaction also constitutes a special factor against extending *Bivens*. *See id*. at 944–45.

In sum, these claims present new *Bivens* contexts, and although one was sufficient, multiple special factors caution against extending a *Bivens* remedy. *See Egbert*, 596 U.S. at 496. As a result, the Court will not imply a *Bivens* remedy for these claims. Accordingly, even assuming that Defendants violated his rights, Plaintiff has no available remedy.[2]

## V.  CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss and dismiss the Complaint with prejudice. To be clear—Plaintiff's allegations raise serious concerns regarding a lack of process and Plaintiff's unwarranted assignment to SHU, which undoubtedly caused him suffering, despite prison officials having several opportunities to rectify their apparent mistake. The Court recognizes the harshness of this outcome. Nevertheless, as a district court, this Court is constrained by the recent decisions of the Supreme Court. An appropriate Order follows.

Dated:  June 2, 2026

/s/ Christine P. O'Hearn
**Christine P. O'Hearn**
**United States District Judge**

---

[2] As a result of its analysis as to the *Bivens* claims, the Court need not reach Defendants' arguments as to qualified immunity.